U.S. DISTRICT COURT
CLERK

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

RECEIVED-ED4

ARCHIE ROBINSON,                    )
                                    )
        Plaintiff,                  )      99 C 3696
                                    )
        v.                          )      Judge Lefkow
                                    )
CITY OF HARVEY and                  )
OFFICER MANUEL ESCALANTE,           )
                                    )
        Defendants.                 )

**FILED**
AUG 14 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:
        Elizabeth Budzinski          Thomas G. DiCianni
        Elisha S. Rosenblum          Ancel Glink et al.
        Wilson, Elser, et al.        140 South Dearborn
        120 North LaSalle            Chicago, IL 60603
        Suite 2600
        Chicago, IL 60611

**DOCKETED**
AUG 1 5 2003

        Please take notice that on August 14, 2003, I filed
with the district court the attached PLAINTIFF'S MEMORANDUM IN
SUPPORT OF PETITION FOR ATTORNEYS' FEES.

                                    _____
                                    Attorney for Plaintiff

Jon Loevy
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

        I, Jon Loevy, an attorney, certify that on August 14,
2003, I faxed a copy of the attached Filing to the above-named
counsel of record.

216

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ARCHIE ROBINSON,                      )
                                      )
          Plaintiff,                  )     99 C 3696
                                      )
          v.                          )     Judge Lefkow
                                      )
CITY OF HARVEY and                    )
OFFICER MANUEL ESCALANTE,             )
                                      )
          Defendants.                 )


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PETITION FOR ATTORNEYS' FEES**


Arthur Loevy
Jon Loevy
Michael Kanovitz
Danielle Loevy
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900


Russell M. Barnett
BRADTKE & ZIMMERMANN
1190 South Elmhurst Rd.
Mount Prospect, IL 60056

## Introduction

By any accounting, Plaintiff's counsel took enormous risk in pursuing Mr. Robinson's civil rights case against a police officer who swore that Mr. Robinson threatened to kill him with a gun which was recovered by the State Police.  Perhaps recognizing the long-shot nature of the action, the Defendants refused to engage in any genuine settlement discussions during discovery or before either trial.

Undeterred by the long odds, Plaintiff's counsel proceeded to litigate this case as aggressively as a case can be litigated, investing thousands of hours of attorney time and more than $35,000 in cash.  In the process, Mr. Robinson was provided with representation on par with the type of service available to clients of the most distinguished large law firms (at which Plaintiff's counsel used to work before pursuing a civil rights practice).  And unlike Defendants' counsel who are paid regardless of the outcome, Plaintiff's counsel undertook this commitment to Mr. Robinson's case notwithstanding the very real possibility of receiving literally nothing for all of their labor and financial investment.

At the various settlement conferences, this Court had a first-hand opportunity to observe Defendants' insistence that this case could be resolved only via the most expensive option available, i.e., summary judgment and then not just one, but two full-scale jury trials on the merits.  Defendants' decision to litigate without genuinely considering settlement resulted in a prodigious amount of billable hours, including thousands of hours by both sides' attorneys, to say nothing of the time expended by the Court.

Having forced Mr. Robinson to accomplish his goals the "hard way," Defendants are hardly in a position to deny that Plaintiff's lawyers are entitled to fair compensation.  Plaintiff's counsel was forced to build the case through time-consuming work, including numerous waves of discovery, more than twenty deposition

sessions, and sifting through thousands of documents. Defendants can hardly claim to be surprised that all of this involved quite a few hours, especially given that, overall, Defendants' counsel *spent even more time than Plaintiff's counsel*. Having received the jury trial(s) they demanded, Defendants now must pay for the substantial attorneys' fees generated as a result of its decisions, and under the law, Plaintiff is entitled to a reasonable lodestar for this time.

I.      **LEGAL STANDARD FOR ADJUDICATING PLAINTIFF'S FEE PETITION**

Given the very favorable jury verdict, Plaintiff's lawyers, Loevy & Loevy and Russell Barnett (hereafter, collectively, "L&L"), are entitled to recover attorneys' fees as the prevailing party under 42 U.S.C. § 1988. See Riverside v. Rivera, 477 U.S. 561, 578 (1986) (fee awards are designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel"). Under familiar lodestar principles, the amount of the fee award is calculated by multiplying reasonable hours times hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This Court has considerable discretion in setting the amount. Spellan v. Board of Ed., 59 F.3d 642, 646 (7th Cir. 1995) (district court has significant discretion to adjust the fee award as necessary).

The number of hours, hourly rates, and total fees sought by Plaintiff's counsel are summarized in Plaintiff's portion of the Joint Local Rule 54.3 ("LR 54.3") Fee Statement, attached hereto as Exhibit A. The Court should award these amounts for the following reasons.

II.     **DEFENDANTS' COMPLETE REFUSAL TO PARTICIPATE IN THE "JOINT FEE STATEMENT" PROCESS REQUIRED BY THE LOCAL RULES CONSTITUTES A DEFAULT ON THE ATTORNEYS' FEES ISSUES**

Notwithstanding the unambiguous requirements set forth in the Local Rules, Defendants have steadfastly refused to participate in the process. Under the law, this refusal constitutes a default.

## A.   LOCAL RULE 54.3

The Local Rule provides that if the nonmovant disagrees with the movant's proposed hourly rates and hours, the nonmovant is obligated to propose what they feel to be more appropriate figures, with the result being a Joint Proposed Statement.  See Local Rule 54.3.  By its express terms, the Joint Fee Statement described in Local Rule 54.3 is thus intended to narrow the issues requiring resolution by the Court, thereby promoting judicial economy.

In compliance with this Local Rule, Plaintiff's counsel forwarded a draft of the Local Rule 54.3 Joint Fee Statement to Defendants' counsel back on November 18, 2002, along with a request for Defendants' cooperation in filling in their own portions of the Statement.  See Group Exhibit B.  In the ensuing ten months, Defendants have flatly refused to cooperate in reaching a Joint Statement.  Id.  Both in writing and by phone, Plaintiff's counsel has since urged Defendants to respond to the Joint Statement draft with the required portions of the information so that Plaintiff's counsel could file a Joint Fee Statement with their fee motion within the timetable provided by the Court.  See id. (2/26/03 & 3/25/03 letters).

## B.   DEFENDANTS' DEFAULT IS DISPOSITIVE

Despite Plaintiff's efforts to obtain compliance during the past ten months, Defendants never objected nor proposed alternative hourly rates or numbers of hours which they believe to be appropriate. Under the law, Defendants' default permits the Court to grant the relief sought by Plaintiff's Motion.  See Hardwick v. Airway Freight Sys., Inc., 2000 WL 263687, *4 (N.D.Ill. Feb. 28, 2000) ("Plaintiff's counsel, as required by Local Rule 54.3(d), submitted to Defendant's counsel a detailed billing of the hours worked, the materials in support of the hourly rate claimed for this work, and all other evidence that Plaintiff's intended to utilize in support of this

3

petition. Defendant did not respond to plaintiffs' submission and
*therefore has not objected to any hours claimed by the plaintiffs nor
the hourly rates sought*") (emphasis added).

     Indeed, it is well-established that this Court's Local Rules
are not mere formalities which are to be followed only at the whim of
counsel. In the context of LR 54.3, as Judge Shadur has explained,
"this District Court [for the Northern District of Illinois] has
established a carefully structured procedure in its LR 54.3 that
serves to implement Rule 54(d) in addressing fee awards stemming from
the entry of judgment." <u>Johnny's Ice House, Inc. v. Amateur Hockey
Ass'n of Ill.</u>, 2001 WL 893840, *5-*7 (N.D.Ill. Aug. 7, 2001). Indeed,
"[s]tatements and designations required by local rules provide 'road
maps' without which the court should not have to proceed." <u>Bradley v.
Work</u>, 154 F.3d 704, 707-08 (7th Cir. 1998), quoting <u>Waldridge v.
American Hoechst Corp.</u>, 24 F.3d 918, 923 (7th Cir. 1994). Thus, the
Seventh Circuit has consistently upheld strict application of the
requirement of Statements under the Local Rules, such as the one
governing the submission of Statements relating to summary judgment
pursuant to LR 56.1. <u>See Parra v. Trustees of Univ. of Ill.</u>, 2001 WL
114721 (7th Cir. Feb 8, 2001) ("this circuit has consistently upheld
the strict application of Local Rule 56.1 and other similar rules").
<u>See also Sattar v. Motorola</u>, 138 F.3d 1164, 1171-72 (7th Cir. 1998)
(affirming denial of motion to compel for counsel's failure to submit
statement required by Local Rule governing discovery motions).[1]

---

[1] Summary judgment provides the best analogy because the Court
requires the parties to distill the disputed issues by means of
exchanging LR 56.1 Statements. Under well-established precedent, an
entire motion can rise or fall based on a party's failure to respond
to the opponent's Statement. <u>See Jupiter Alum. Corp. v. Home Ins.</u>,
225 F.3d 868, 871 (7th Cir. 2000); <u>Schneiker v. Fortis Ins. Co.</u>, 200
F.3d 1055, 1057 (7th Cir. 2000); <u>Waldridge v. American Hoechst</u>, 24
F.3d 918, 922 (7th Cir. 1994).

Thus, if a party can lose a discovery motion for no reason
other than failure to comply with the Local Rules, and a party can
even lose a summary judgment motion for no reason other than failure
to comply with the Local Rules, it certainly stands to reason that a
party can lose a fee motion for failure to comply with the Local
Rules.  See H. K. Mallak, Inc. v. Fairfield FMC Corp., 209 F.3d 960,
963 (7th Cir. 2000) ("We have repeatedly held that district courts are
entitled to insist on compliance with local rules" which are designed
to make the process of resolving motions "operate more smoothly, and
there is nothing in this case that warrants an exception to that
principle").  Given the Defendants' decision to ignore Plaintiff's
repeated requests for cooperation, Plaintiff's Motion can and should
be granted in full on this ground alone.  Mitchell v. Allied Interst.,
Inc., 1999 WL 1100961, *1 (N.D.Ill. Dec. 2, 1999) (objections to
plaintiff's fee request "would be barred because of the defendants'
noncompliance with Local Rule 47 [predecessor to 54.3(d)])").

I.      **PLAINTIFF'S HOURS SPENT WERE REASONABLE AND SHOULD BE
        APPROVED BY THE COURT**

In total, L&L seeks compensation for the 2,372 hours spent
litigating this case, including a motion to dismiss, extensive
discovery carried out in multiple waves, numerous discovery motions,
more than twenty deposition sessions, Monell-related policy issues,
expert witness litigation, an oversized summary judgment motion, a
long trial, a second long trial, and extensive post-trial motion
briefing.  See Exhibit C (daily billing records for each of
Plaintiff's lawyers).  Crucially, Plaintiff notes that their total
time *is even less than the time Defendants' counsel spent* on this
contentious and time-consuming litigation.  Compare Spina v. Forest
Preserve Dist. of Cook County, 2002 WL 1770010, *6 (N.D.Ill. July 31,
2002) ("The Court finds it entirely reasonable that [plaintiff's

5

counsel] would expend more hours prosecuting this case than defense counsel spent defending it; particularly in light of [plaintiff's] level of representation and the outcome she achieved in this case").[2]

Turning to the specific hours billed by L&L, Plaintiff's counsel stand on the entries in their time sheets. Defendants have not identified any time they believe to be unreasonable -- a default which is dispositive, as discussed above -- but the total amount of time spent litigating this difficult case was reasonable, particularly given that Defendants billed **even more** hours over the same period of time. Plaintiff may have spent more time than the defense on some tasks (e.g., trial preparation), but Plaintiff also spent less time on other tasks (e.g., summary judgment). Overall, the amount of hours was reasonable, particularly given the extraordinary success. See Petersen v. Gibson, 2002 WL 31738798, *1 (N.D.Ill. Dec. 4, 2002) (Zagel, J.) ("Could one conclude that some of the lawyers spent too much time on one matter or another? Possibly, but I am not inclined to do so. . . The bottom line is, as Petersen says, compensation is sought 'for approximately 1,000 hours of attorneys' time over five years,' and I do not find that any of the time spent is unreasonable").[3]

---

[2]   In producing their time sheets, Defendants also produced letters from Harvey's insurance company indicating that it was not going to pay Defendants' counsel full bills because its hours were greatly exceeding the original estimate. See Group Exhibit D. By all appearances, therefore, the insurance company simply stopped agreeing to pay for defense counsel's hours, a reality which undoubtedly affected the volume of Defendants' bills. However, the fact that defense counsel may have begun voluntarily reducing the number of reported hours to appease the insurance company cannot be counted against Plaintiff in judging the total amount of hours reasonably necessary to litigate the case successfully.

[3]   Finally, Defendants have not produced records from all of the attorneys who billed time for the defense in this case. Attorney Mark Wolf, for example, represented Harvey's insurance company and attended settlement conferences with the Court on behalf of Harvey. No bills for attorney Wolf's time, however, have been produced. See Cooper v. Casey, 897 F. Supp. 1136, 1139-40 (N.D.Ill. 1995) ("it is unpersuasive
(continued...)

II.        **PLAINTIFF'S COUNSEL'S HOURLY RATES SHOULD BE APPROVED**

An attorney's reasonable hourly rate is determined based on the market rate for the attorney's services, which is the rate charged by lawyers of similar ability and experience in the community.  Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999). Additionally, "courts may increase or decrease the fee request" in light of the twelve Hensley factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is contingent or fixed; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

Quinn v. Ultimo Enter., Ltd., 2001 WL 128242 (N.D.Ill. Feb. 9, 2001), quoting Hensley, 461 U.S. 429-30 n.3.

As summarized in the attached Joint Statement (Exhibit A), undersigned Plaintiff's counsel submit rates of $350, $295, $275, $260, $250, and $240 for Arthur Loevy, Jon Loevy, Michael Kanovitz, Danielle Loevy, Russell Barnett, and Jon Rosenblatt, respectively. Without exception, each of the Hensley factors support these requests.

A.    **"DEGREE OF SUCCESS OBTAINED"**

As the Supreme Court has made clear, by far "the most critical factor" in determining reasonableness of the fee award "is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). By any measure, L&L were able to obtain an extremely favorable result for their client here.

---

[3]  (...continued)
for defendants to cavil at plaintiffs' division of labor as purportedly overlapping and inefficient, when defendants' own expenditure of time cannot be evaluated for comparative purposes because they do not account for their time. . .").

Prevailing against a police officer who claimed that Mr. Robinson
basically attempted to kill him was no simple task, especially given
the myriad other police officers lining up to testify on Officer
Escalante's behalf. Telpro, Inc. v. Renello, 1994 WL 380607 (N.D.Ill.
July 18, 1994) ("The degree of the plaintiff's success in relation to
his claims is the most critical factor in determining the amount of
attorney's fees awarded").

Moreover, Plaintiff's degree of success is particularly
significant in light of the complete inability to achieve Plaintiff's
goals through negotiation. This Court had an opportunity to observe
for itself Defendants' general unwillingness to resolve the case via
settlement: before the first trial, before the second trial, and even
after it, Defendants have apparently believed that their position was
all but invincible. This negotiation strategy was certainly within
Defendants' prerogative, but it imposed substantial legal costs on
both the judicial system and the Plaintiff. Plaintiff and his counsel
persevered in the face of this obstinance, and the degree of success
is all the stronger in light of Defendants' uncompromising stance.

### B.   TIME/LABOR AND OPPORTUNITY COST

One of the Hensley factors is "the preclusion of employment
by the attorney due to acceptance of the case." Both Plaintiff and
Defendant in this case each devoted the equivalent of an entire year
of attorney billable hours to this case. For Plaintiff's counsel,
this commitment obviously presented a substantial opportunity cost,
and this factor thus favors the rates sought.

### C.   "EXPERIENCE, REPUTATION, AND ABILITY"

Plaintiff's counsel respectfully submit that their
credentials stack up favorably against lawyers at the more prestigious
firms in the City. See Exhibit E. Jon Loevy, for example, previously
worked for Sidley & Austin after clerking for Judge Shadur, and he has

served as lead counsel for eleven trials in federal court.  Id.
Despite the difficulty in winning civil rights cases, he has prevailed
in eight of these eleven trials, achieving six jury verdicts in excess
of $200,000.  Id.  All four of L&L's trials against Chicago have
resulted in million dollar-plus verdicts, including a $28 million
verdict in a police brutality case which is believed to be the largest
ever of its kind in Chicago.  Arthur Loevy, Mike Kanovitz, and
Danielle Loevy have served as co-counsel at many of these trials, and
each have accomplished other impressive successes which attest to
their own skills, not to mention considerable experience in the day-
to-day management of scores of other civil rights cases.  Id.

Had they remained at big firms, the lawyers at L&L could
have commanded top-tier market rates from clients.  Although L&L
lawyers instead pursued careers in the civil rights field, L&L's
present clients are no less entitled to premium legal services.
Without intending to convey immodesty, Plaintiff's counsel submit that
Defendants would likely acknowledge that their performance in this
case qualifies as premium service.

### D.   DEGREE OF NOVELTY/DIFFICULTY, SKILL REQUIRED, AND "UNDESIRABILITY OF THE CASE"

This Court had a good vantage point for observing that this
was not an easy case to build, making it correspondingly all the less
desirable.  See Perez v. Z Frank Oldsmobile, Inc., 2001 WL 849476, *3
(N.D.Ill. July 18, 2001) ("Z Frank launched an aggressive defense and
. . . courts have recognized that awarding attorneys' fees to
successful plaintiffs is necessary to encourage the diligent pursuit
of claims").  The task involved multiple comprehensive rounds of
discovery; more than twenty deposition sessions; lengthy summary
judgment briefing; expert witnesses; Monell policy-related issues; and
extensive trial preparation for not one, but two, lengthy trials.

9

All of this combined to make representation of Mr. Robinson a very risky proposition. Compare Exhibit E (Loevy Aff., ¶ 15, citing, e.g., another case where L&L spent more than $20,000 of their own money and more than 1,000 hours in a losing effort in a police shooting case). From an economic standpoint, it was virtually irrational to devote so much in resources to this litigation, yet Plaintiff's counsel agreed not only to file a suit on Mr. Robinson's behalf, but also to commit the resources, time, and energy to fight very hard to pursue his claim. As another court remarked in the context of approving $350/hour for an attorney with qualifications comparable to Jon Loevy in Spina, 2002 WL 1770010, at n.4:

> The parties have appeared before the Court in this matter many times over the past several years. The Court's initial impression of Plaintiff's case was underwhelming; the Court was doubtful that Plaintiff would survive a summary judgment motion, and was doubtful that Plaintiff could persuade a jury that she was entitled to a substantial award. But Plaintiff and [her counsel] slowly built a solid case against the District. . .

Id. A similar result should be approved here.

### E.   CONTINGENT VERSUS FIXED FEE

The fifth and sixth Hensley factors relate to the terms of attorney retention. Unlike Defendants' counsel who get paid win or lose, L&L faced a very real chance of earning $0/hour. Accounting for this risk helps justify a substantial hourly rate. See Spina, 2002 WL 1770010, *3-*4 (approving elevated fee of $350/hour for an attorney with the same level of experience as Jon Loevy because "[attorney] McFadden accepted the case on a contingency basis, and is entitled to be rewarded for assuming the risk of nonpayment"), citing Blum v. Stenson, 104 S.Ct. 1541, 1551 (1984) (this bonus induces attorneys to take meritorious § 1983 cases that might not otherwise be heard).

Additionally, L&L was willing to take this contingency case with no retainer whatsoever from Mr. Robinson. See Exhibit E, Jon Loevy Aff. ¶ 18. Plaintiff's counsel also agreed to pay all costs of

litigation, thereby bearing all of the financial risk.  See id. ¶ 18.
The total capital outlay at risk exceeded $35,000, and this factor,
too, must be taken into account in assessing reasonableness and
appropriateness of the fee.  Id.; Johnny's IceHouse, Inc. v. Amateur
Hockey Ass'n of Ill., 2001 WL 893840, *4 (N.D.Ill. Aug. 7, 2001)
("where as here a plaintiff's counsel has undertaken representation
[solely] on a contingent fee basis. . . a court's determination of
reasonableness must follow a different course").

F.    THE PREVAILING MARKET RATES

        Plaintiff's counsel are contingency lawyers without paying
clients, so as a starting point, "[i]f the court is unable to
determine the attorney's true billing rate (because he maintains a
contingent fee or public interest practice, for example), then the
court should look to the next best evidence -- the rate charged by
lawyers in the community of reasonably comparable skill, experience,
and reputation."  K.L. v. Edgar, 2001 WL 184974, *1-*2 (N.D.Ill. Feb.
21, 2001), quoting People Who Care v. Rockford Bd. of Ed., 90 F.3d
1307, 1310 (7th Cir. 1996).  The burden falls initially on Plaintiff,
but after he establishes the relevant "rates similarly experienced
attorneys in the community charge paying clients for similar work,"
the burden shifts back to the Defendant to show a "good reason why a
lower rate is essential."  People Who Care, 90 F.3d at 1313.

1.    GENERALLY

        Reviewing comparable rates in the community of civil rights
attorneys, it is apparent that Plaintiff's requests are abundantly
reasonable.  There is extensive evidence, for instance, that in the
Northern District of Illinois, it is far from uncommon for
accomplished civil rights attorneys to receive rates in the range of
$300 to $350 per hour.  See Barnett v. City of Chicago, 122 F. Supp.2d
915, 916-18 (N.D.Ill. Feb. 29, 2000) (approving $325/hour and

11

$320/hour for civil rights attorneys); <u>Batt v. Micro Warehouse, Inc.</u>, 241 F.3d 891, 895 (7th Cir. 2001) ($350/hour for Ernie Rosiello was no abuse of discretion); <u>Not on Guest List Coalition v. City of Chicago</u>, 1999 WL 350655, *1 (N.D.Ill. May 19, 1999) (awarding Edward T. Stein $300/hour for civil rights work four years ago); <u>Quinones v. City of Chicago</u>, 1995 WL 656690, *6 (N.D.Ill. Nov. 6, 1995) (awarding plaintiff civil rights attorney $300/hour eight years ago); <u>Gayton v. Kapus</u>, 181 F.R.D. 573, 580 (N.D.Ill. 1998) (awarding plaintiff civil rights attorney $300/hour five years ago).

Finally, Plaintiff submits the affidavit of attorney Bradley S. Weiss (whose approved billing rate is $350/hour) averring that L&L's rates are reasonable and consistent with the market rates for attorneys with similar experience and practices in the Northern District of Illinois. <u>See</u> Exhibit F (Weiss Aff. ¶¶ 1-10).

### 2.    SPECIFIC EXAMPLES

Several recent fee awards bear on the question before the Court. For example, in <u>Spina v. Forest Preserve Dist. of Cook County</u>, 2002 WL 1770010, *6 (N.D.Ill. July 31, 2002), a fee petition in the amount of $854,779.17 in attorneys' fees was approved by Judge Keys on behalf of a small law firm in a discrimination civil rights lawsuit. <u>Id.</u> Plaintiff's attorney in that case is a solo practitioner with the same class year as Jon Loevy, and the Court approved a billing rate of $350/hour for in court time and $325/hour for everything else. <u>Id.</u>; Exhibit G, McFadden Aff.

Additionally, in <u>Gordon v. United Airlines</u>, 98 C 1378, Plaintiff's counsel had the opportunity to ascertain first-hand the latest "bump" in the market rate for premium legal services in civil rights cases. Although fee petition briefing before Judge Leinenweber was recently stayed due to United's bankruptcy, Plaintiff notes that a Mayer, Brown associate with the same graduation year as Jon Loevy

12

charged $345/hour for her services at trial, and the lead trial
counsel (with far less trial experience than any of the L&L lawyers)
billed at $425/hour.  See Exhibit E, J. Loevy Aff. ¶ 18 & attachment.
The senior partner on the case was billing at $500/hour.  Id.  If this
is the top end of the market for civil rights services, there is no
reason the rates sought here are unreasonable.

### 3.    ATTORNEY KANOVITZ'S RATE

The only Plaintiff's lawyer with an established rate is
attorney Kanovitz, who has a paying client compensating him at the
rate of $275/hour.  See Exhibit E, Kanovitz Aff. ¶ 10.  This rate
should be adopted by the Court.  See People Who Care v. Rockford Bd.
of Ed., 90 F.3d 1307, 1310-13 (7th Cir. 1996) (once Plaintiff meets
his burden, the burden shifts back to Defendants to show a "good
reason why a lower rate is essential").

### 4.    PRIOR CASE INVOLVING L&L DOES NOT JUSTIFY A DOWNWARD DEPARTURE

Defendants' counsel have argued in other cases that L&L's
involvement in the case of Medina v. City of Chicago, 2001 WL 1104600
(N.D.Ill. Sept. 14, 2001) necessitates a lower rate.[4]  Not so.  The
Medina case -- described by the court as an "average excessive force
case in virtually every respect" -- was resolved by L&L short of trial
pursuant to a settlement, after which Judge Kennelly ruled on a fee
petition.  Unfortunately, in Medina, the firm of L&L made the mistake
of offering "no evidence" save for conclusory affidavits about what
they thought their rate should be.  Id. at *5-*6.  The Court selected
rates of $210/hour, but very clearly qualified its ruling as being
based on the lack of any record before it: "This is not to say that

---

[4]  To date, no court to date has ever adjudicated a L&L fee petition
other than Medina, although a similar petition is presently in the
middle of a briefing schedule before Judge Holderman in the case of
Garcia v. Chicago, 01 C 8945.

*they might not be able to support higher rates,* **but only that they
have not done so by their submissions in this case."** Id. at *6
(emphasis added). Judge Kennelly's conclusion, based as it was
(incorrectly, in Plaintiff's view) on the fact that several years
earlier counsel had agreed to compromise their rates at $190/hour to
facilitate a settlement in another case (id.), by no means controls
the result here.[5] Spegon, 175 F.3d at 557 (while other similar cases
are relevant to a market rate, "each court should certainly arrive at
its own determination as to a proper fee"), quoting People Who Care,
90 F.3d at 1312.

### III.   PLAINTIFF'S COSTS ARE REASONABLE AND SHOULD BE APPROVED

Receipts reflecting the expenses claimed by Plaintiff are
attached as Exhibit H. These expenses (which are reflected on the
Joint Fee Statement attached as Exhibit A) were reasonable and
necessary, and should be approved.

---

[5]   In 1999, L&L successfully obtained what was reported to be the
largest verdict in a police brutality case in the history of the City
of Chicago in a case called Regalado v. Chicago, 96 C 3634. As Judge
Kennelly recognized in Medina, in order to facilitate prompt payment
to the paraplegic plaintiff in need of money, the case was settled,
with part of the settlement being compromised rates (66.6%) for fees.
Thus, in Regalado, Plaintiff's counsel's rates were never adjudicated
by any judge; rather, given the magnitude of the jury verdict and the
client's urgent need for payment, Plaintiff's counsel voluntarily
agreed to settle the fee dispute by agreeing to greatly-reduced rates.
Judge Shadur was neither called upon to, nor did he, ever devote any
attention whatsoever to deciding the issue. He merely approved the
parties' settlement on the attorneys' fees issue. Judge Kennelly's
decision in Medina to use those compromised rates as a baseline for
setting L&L's rates in another case has no more persuasive force than
to say that L&L is really worth $0/hour because the firm has
compromised their attorneys' fees down to zero in other cases. Put
simply, the fact that counsel has previously agreed to accept a below-
market rate (if that meant avoiding wasteful fee litigation) hardly
means they are thereby forever bound to that below-market rate, and to
the extent Judge Kennelly accepted such an argument in Medina, that is
all the more reason to decline to follow his ultimate conclusion.

## Conclusion

Unlike some attorneys -- including the defense attorneys in this case -- who receive renumeration win or lose, plaintiff civil rights attorneys frequently expend substantial time and out-of-pocket capital on cases without any compensation for their efforts.  Truth be told, all too often, undersigned counsel have devoted substantial sums of money and time in worthwhile cases in the past, only to receive nothing at all for those efforts.  Where, as here, however, the client does prevail (and prevail in a big way), counsel deserves compensation commensurate with the risk and the degree of success.  This is particularly the case when the client's very success is due in large measure to his attorneys' diligent and time-consuming efforts on his behalf in the face of uncompromising resistance.  The fees sought in the Joint Fee Statement should be approved.

WHEREFORE, Plaintiff respectfully requests an Order approving the attorneys' fees and costs contained in the Joint Fee Statement filed herewith as Exhibit A.

RESPECTFULLY SUBMITTED,

Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Mike Kanovitz
Danielle Loevy
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

15