Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3696 | **DATE** | 8/12/2004 |
| **CASE TITLE** | Archie Robinson vs. City of Harvey, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's petition for attorney's fees is granted in part and denied in part. The Court awards plaintiff a reasonable attorney's fee of $375,285.53 ($375,171.84 in fees plus $113.69 in expenses) and taxes Rule 54(d) costs in the amount of $14,393.28. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 1 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 251 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARCHIE ROBINSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 99 C 3696 |
| | ) Paul E. Plunkett, Senior Judge |
| CITY OF HARVEY and OFFICER MANUEL ESCALANTE, | ) ) ) |
| Defendant. | ) |

DOCKETED
AUG 1 3 2004

## MEMORANDUM OPINION AND ORDER

This case, recently transferred from Judge Lefkow, is before the Court on plaintiff's motion to recover fees to pursuant to 42 U.S.C. § 1988.[1] For the reasons set forth below, the motion is granted in part and denied in part.

### Discussion

In civil rights cases, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. There is no dispute that plaintiff prevailed in this suit. Our task, then, is to determine what "a reasonable

---

[1]The case was transferred to this Court almost two years after the second trial ended and nearly one year after the fee petition was filed. Thus, the Court finds itself in the difficult position of determining the reasonableness of work performed years earlier that it did not observe. Difficult or not, however, it is the Court's obligation to make a decision on the petition, which we have done to the best of our ability.

1

attorney's fee" is in this case. "The most useful starting point for determining the amount of a reasonable fee," the Supreme Court tells us, "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). Plaintiff seeks to recover $671,677.50 for 2372.3 hours of work performed by seven lawyers: Arthur Loevy, Jon Loevy, Danielle Loevy, Michael Kanovitz, Jon Rosenblatt, Russel Barnett and MFZ. (*See* Pl.'s Exs. Supp. Fee Pet., Ex. A.)[2] The City contends that both the number of hours the lawyers billed and the hourly rates they seek are too high.[3]

## Number of Hours Expended

Before turning to the City's specific objections, we must address its contention that section 1988 does not authorize the recovery of fees for the first trial. In the City's view, the verdict in its favor on the section 1983 claim in the first trial divests plaintiff of prevailing party status for that proceeding.

The Court disagrees. Though plaintiff lost on the federal claim in the first trial, the results of that trial had to be set aside. (*See* 2/22/02 Min. Order (granting plaintiff's motion for a new trial because jury returned inconsistent verdicts).) There is nothing in the record to indicate that the

---

[2]Presumably, the time of the lawyer identified only as MFZ, who is an associate of Barnett's, is included in Barnett's hours in Exhibit A to plaintiff's fee petition.

[3]Because the City did not participate in the process contemplated by Local Rule 54.3, plaintiff urges us to deem all of its objections waived. Such a result, though defensible under the law of this circuit, is unduly harsh. We will, however, enforce the spirit of the Local Rule, by reviewing only those time entries to which the City has lodged a specific objection.

conduct of plaintiff's counsel caused the mistrial; the jury simply erred. At the second trial, of course, plaintiff prevailed on his section 1983 claim. Because the first trial was an unavoidable hurdle on plaintiff's path to success, he can recover reasonable fees spent on it. *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 739 (7th Cir. 2003) ("[W]hen two trials are required to achieve the ultimate result, a plaintiff should be compensated for both trials, as long as the time spent at both was reasonably expended.") (internal quotation marks and citation omitted).

The City also contends that plaintiff cannot recover fees for his counsel's work in connection with the state-law claim during the second trial. Because the malicious prosecution claim was wholly unrelated to the section 1983 claim, the City says, plaintiff can recover fees only for the latter.

Usually, excessive force and malicious prosecution claims are quite distinct. The former requires proof that an arrest was made with unreasonable force; the latter that there was no probable cause for the ensuing prosecution. This was not the usual case, however. Here, the defense to both claims was that plaintiff pulled a gun on defendant Escalante. If the jury believed plaintiff had a gun, Escalante's use of force, shooting plaintiff, was reasonable and there was probable cause for the weapons charge leveled against plaintiff. If the jury did not believe plaintiff had a gun, the use of force was excessive and the weapons charge was baseless. Given their common factual core, it would be difficult, if not impossible, to identify the time plaintiff's counsel devoted solely to either claim. Because plaintiff's state and federal claims are interrelated, he may recover reasonable fees expended litigating both. *Cf. Hensley*, 461 U.S. at 435 (stating that plaintiff may recover fees spent on unsuccessful claims if they are related to claims on which plaintiff prevailed).

We turn now to the City's objections to counsel's billing records. The City lodges specific objections to approximately sixty of plaintiff's counsel's time entries.[4] (*See* City's Resp. Fee Pet., Ex. J.) The City says those entries reflect duplicative work, work that should have been performed by clerical staff, or describe the work too vaguely to determine if the time spent was reasonable.

The Court agrees that Jon Loevy and Russel Barnett unreasonably duplicated their efforts in a number of instances. The billing records indicate, for example, that both men billed for preparing and attending depositions taken in the case, though only one of them actually took or defended each deposition. The records also show that both men billed for attending the same court hearings.

Certain hearings, those in which numerous motions are argued, for example, may require the presence of more than one lawyer. But plaintiff's counsel does not argue that such was the case here. Rather, they contend that they should be compensated for sending multiple lawyers to various proceedings because that is what defense counsel did.

But the two sets of counsel were not situated similarly in this case. As is common in police misconduct cases, the police officer defendant and the municipality were represented by different lawyers. Thus, it is not surprising that more than one defense lawyer appeared at each proceeding. Moreover, even if defendants had had the same lawyers, their practice would not be "an immutable yardstick of reasonableness." *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000) (internal quotation marks and citation omitted). Conduct that is objectively unreasonable – sending a dozen lawyers to every hearing, for example – would not become reasonable simply

---

[4]The City also says it challenges "all of [plaintiff's] counsel's hours" because their time records are insufficient. (City's Resp. Fee Pet. at 18.) That kind of blanket objection is wholly improper. As noted above, it is the City's obligation to identify the specific time entries to which it objects and the basis for those objections. *(See supra* at 2 n.2.) The City's failure to do so for the bulk of plaintiff's counsel's time entries constitutes a waiver of any objections to them.

4

because defense counsel did it. Thus, plaintiff's bare retort that "defendants did it" does not do much to advance the reasonableness determination.

In short, unless more than one lawyer was needed at any proceeding, and plaintiff has not demonstrated that they were, plaintiff cannot recover for one attorney's observation of another's work.[5] Moreover, to the extent compensable and non-compensable work are block-billed together, the entire entry will be deleted.[6]

The City also argues that plaintiff cannot recover for Jon Rosenblatt's work on March 21, 23, 25-30, April 4, 5, 2001 and July 15, 16, 18, 2002 because it is duplicative of other lawyers' work. The Court agrees that the time is not compensable, but for a different reason. It may well be that the work Rosenblatt performed on those days was unique to him, but his time descriptions – "witness/exhibit/trial assist" – are too vague to enable us to determine precisely what he did. Consequently, his time entries for those days will be deleted.

Aside from Rosenblatt, the billing records show that five lawyers, Jon Loevy, Arthur Loevy, Danielle Loevy, Russel Barnett and MFZ, billed time to preparing for or attending the trials in this case. The City says that is several lawyers too many and asks that we delete or substantially decrease the time billed by everyone but Jon Loevy.

---

[5]There are two exceptions: final pretrial conferences and jury instruction conferences. The record shows that both of these proceedings were lengthy and involved a myriad of issues, on which both lawyers had undoubtedly worked. Consequently, plaintiff may recover the time billed by both Jon Loevy and Barnett for attending them.

[6]The entries deleted for this reason are: 7.50 hours of Barnett's time on 12/8/99, 5.40 hours of Barnett's time on 3/20/01(which Barnett admits was erroneously billed), all of Barnett's time on 7/7/99, 7/22/99, 12/15/99, 12/17/99, 12/20/99, 12/22/99, 1/10/00, 1/11/00, 1/12/00, 1/18/00, 7/18/00, 11/16/00, 3/23/01, 4/24/02, 7/30/02; Danielle's time on 12/17/99; Arthur's time on 9/10/02 and Jon Loevy's time on 9/10/02. Because all attorneys were required to appear at the pretrial conference, however, none of the time billed to that task will be deleted.

The fact that multiple lawyers billed for preparing for and attending the trials is not, by itself, troubling. In fact, it might be quite efficient to have some lawyers handling the work in court and others outside the courtroom preparing examination outlines, exhibits and the like. But that is not what happened here.

Rather, Jon Loevy handled the first trial virtually on his own. Of the nineteen unduplicated witnesses, Jon examined sixteen, Barnett two and Danielle one. Jon Loevy also did the opening and closing arguments and made all of the side-bar arguments, even when those side-bars concerned testimony he did not present or defend. Yet, Jon, Barnett, Arthur and Danielle all billed for attending the trial each day.

Given Jon Loevy's domination of the courtroom proceedings, plaintiff can recover all of the time he billed for attending and preparing for the first trial.[7] He can also recover the time Barnett, the second chair, billed for attending the first trial, as well as any time he billed for preparation that is sufficiently described.[8] Also recoverable is the time billed by MFZ. The five and one-half hours that lawyer billed were devoted to legal research that was apparently not performed by any other member of plaintiff's legal team.

Plaintiff cannot, however, recover for all of the time that Arthur and Danielle Loevy billed for attending and preparing for the first trial. None of the time billed by Arthur Loevy, who presented no testimony and whose time descriptions are too vague to enable us to determine

---

[7]Because he was lead counsel and we have substantially discounted the trial preparation hours of his colleagues, plaintiff may recover for even the tersely described trial preparation time billed by Jon Loevy.

[8]Plaintiff may not recover for 8.75 of the hours Barnett billed on 3/25/01 because the description "[c]ontinued trial preparation" is too vague to enable us to determine what he did.

precisely what he did, is recoverable.[9] The time Danielle Loevy billed for preparing for and presenting Liz Robinson's testimony is recoverable. But Plaintiff may not recover for the time Danielle spent observing the trial or for trial preparation activities for which Jon Loevy or Barnett also billed.[10]

There are similar problems with the bills for the second trial. Though Jon Loevy once again handled most of the trial with Barnett as second chair, Danielle and Arthur Loevy also billed for attending the trial each day. As with the first trial, plaintiff can recover for all of Loevy's trial attendance and preparation time, and Barnett's trial attendance time and any time he billed for preparation that is sufficiently described.[11] Plaintiff cannot, however, recover for the time Arthur and Danielle observed the trial without actively participating in it or did trial preparation work that was also performed by others.[12]

---

[9]This includes the time Arthur billed on: 3/20/01, 3/26/01, 3/27/01, 3/28/01, 3/29/01, 3/30/01, 3/31/01, 4/1/01, 4/2/01, 4/3/01, 4/4/01, 4/5/01, 4/6/01.

[10]Plaintiff may not recover for 7.0 of the hours Danielle Loevy billed on 3/27/01 or for any of the time she billed on 3/20/01, 3/26/01, 3/28/01, 3/30/01, 3/31/01, 4/1/01, 4/2/01, 4/3/01, 4/4/01, 4/5/01 and 4/6/01.

[11]Plaintiff may not recover for: (1) the four hours Barnett spent attending jury selection on 7/10/02 because Jon Loevy and Arthur Loevy, who plaintiff says was "in charge of" jury selection, *see* Pl.'s Reply Supp. Fee. Pet., Ex. A, Pl.'s Resp. Objections Arthur Loevy's Time, also billed for that time; or (2) 6.5 of the 13.5 hours he billed on 7/17/02 because he block-billed trial attendance and preparation activities with work on "other Harvey lawsuit."

[12]Plaintiff may not recover for: one hour of time Arthur billed on 7/10/02 (the record shows jury selection took only four hours), all of the time he billed on 7/12/02, 7/14/02 (the time he spent critiquing the opening statement, which would otherwise have been recoverable, *see infra* at 8, was block-billed with duplicative work with witness Reiter), 7/15/02, 7/16/02, 7/17/02, 7/18/02, 7/19/02, 7/21/02, 7/23/02, 7/24/02; or all of the time Danielle billed on 7/12/02, 7/15/02, 7/16/02, 7/17/02, 7/19/02, 7/23/02, 7/24/02.

The City also takes issue with the time Michael Kanovitz billed to the second trial. Though plaintiff concedes that all of the time Kanovitz billed on July 15, 2002, and seven of the hours he billed on July 16, 2002, were for clerical work, he contends that Kanovitz otherwise billed for unduplicated legal work on July 16, 17 and 18, 2002. The Court agrees and finds that time to be compensable.

We also do not believe that plaintiff's counsel unreasonably duplicated their efforts on the Rule 59 briefs or the opening and closing statement drills for the two trials. In all of these efforts, Jon Loevy took the laboring oar, with his co-counsel providing editorial comments and input. When, as here, the time billed is not excessive, that kind of collaboration is reasonable.[13]

The City also contends that plaintiff cannot recover for the time Barnett spent drafting subpoenas, abstracting depositions, and the like because those are tasks that should have been performed by a paralegal. Barnett says that it was more efficient for him to perform the contested tasks than it would have been for him to assign the work to someone else. The Court agrees. It would likely have cost more money if Barnett had explained the tasks to a paralegal, the paralegal had performed them and Barnett had reviewed the work than it did for Barnett simply to perform the tasks in the first instance. Barnett's time is, therefore, recoverable.[14]

---

[13] We refer here to the time billed by Arthur and Danielle on 3/25/01, 1.75 hours billed by Barnett on 3/25/01, the time billed by Danielle and Barnett on 7/14/02, and the time billed by Arthur, Danielle and Barnett on 7/22/02. The time Arthur spent on the opening statement drill on 7/14/02, however, is not recoverable because it is block-billed with other work that was also performed by Barnett. Nor is the time Arthur and Danielle spent on the closing statement drill on 4/3/01 recoverable because that time is block-billed with trial attendance.

[14] We refer here to the time Barnett billed to drafting subpoenas, abstracting depositions, taking the final pre-trial order to the binder and picking up photographs on 11/29/99, 12/18/99, 2/19/01, 3/9/01, 3/10/01, 3/11/01 and 3/15/01.

In sum, plaintiff may recover for 1258.75 hours billed by Jon Loevy, 60.25 hours billed by Arthur Loevy, 73 hours billed by Danielle Loevy, 24.75 hours billed by Michael Kanovitz, 24.75 hours billed by Jon Rosenblatt, 510.15 hours billed by Russel Barnett and 18.75 hours of paralegal work.[15]

We must now determine the appropriate hourly rate for each of plaintiff's attorneys. Section 1988 fee awards "are to be based on market rates for [the] services rendered." *People Who Care v. Rockford Bd. Of Educ.,* 90 F.3d 1307, 1310 (7th Cir.1996) (internal quotation marks and citation omitted). "[An] attorney's actual billing rate for comparable work," is presumed to be the market rate. *Id.* The party seeking the fee bears the burden of proving the market rate for his work. *Spegon,* 175 F.3d at 554.

Plaintiff is seeking the following hourly rates for his lawyers: $295.00 for Jon Loevy, $350.00 for Arthur Loevy, $260.00 for Danielle Loevy, $275.00 for Michael Kanovitz, $240.00 for Jon Rosenblatt and $250.00 for Russel Barnett. (Pl.'s Exs. Supp. Fee Pet., Ex. A.) Plaintiff admits, however, that his attorneys are "contingency lawyers without paying clients." (Mem. Supp. Fee. Pet. at 11.) Because they have no actual billing rates, we must "look to the next best evidence – the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation," to determine the appropriate rates in this case. *People Who Care,* 90 F.3d at 1310 (internal quotation marks and citation omitted).

Jon Loevy is a 1993 law graduate. (Pl.'s Exs. Supp. Fee Pet., Ex. E.) Thereafter, he clerked for Judge Shadur for one year and worked in the litigation department of a large law firm for two

---

[15]These hours were billed by Michael Kanovitz for operating ELMO during the second trial on 7/15/02 and 7/16/02.

years. (*Id.*) In 1996, Loevy started his own firm and, in the intervening eight years, has tried a substantial number of civil rights cases. (*Id.*) Plaintiff asserts that Loevy's experience warrants an hourly rate of $295.00.

Plaintiff's request is supported by Judge Holderman, who awarded Loevy fees at $295.00 per hour for his work in *Garcia v. City of Chicago*, No. 01 C 8945, *see* 2003 WL 22175620 (N.D. Ill. Sept. 19, 2003), and Judge Baker of the Central District of Illinois, who followed Judge Holderman's lead, in *Smith v. City of Urbana*, No. 01-2209 (C.D. Ill. Mar. 30, 2004). (*See* 4/5/04 Pl.'s Mot. Supplement Record Regarding Fee Pet., Ex. A.)[16]

In general, however, only those practitioners who have substantially more experience than Loevy can command $300.00 per hour. Bradley Weiss, Robin Potter, Candace Gorman and Monica McFadden, whose affidavits plaintiff has submitted, each report hourly rates in excess of $300.00.[17] (Pl.'s Exs. Supp. Fee Pet., Exs. F & G.) But Weiss has been in practice for seventeen years, Potter for twenty-six years and Gorman for twenty-one years. (*Id.*) Moreover, though McFadden has been a lawyer for only eleven years, she spent fifteen years working in the civil rights arena prior to attending law school. (Pl.'s Exs. Supp. Fee Pet., Ex. F.) Loevy's experience, eleven years as a lawyer, eight of them as a civil rights practitioner, is not comparable.

---

[16]Plaintiff contends that the rates for its counsel were established by Judge Holderman in *Garcia*. Though Judge Holderman's opinion about the reasonableness of counsel's requested rates is certainly relevant to the market rate issue, his opinion did not conclusively determine the appropriate market rates for these lawyers. *See Spegon*, 175 F.3d at 557 ("While hourly rates awarded to counsel in similar cases are evidence of an attorney's market rate, each court should certainly arrive at its own determination as to a proper fee.") (internal quotation marks and citation omitted).

[17]Plaintiff has also submitted the affidavit of Bruce Pfaff. The affidavit does not, however, state Pfaff's hourly rate. Thus, it does nothing to advance the reasonableness determination.

Nor is his experience comparable to that of the civil rights lawyers who have been awarded fees at hourly rates in excess of $300.00 by judges of this court. *See Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001) (upholding rate of $350.00 per hour for Ernie Rossiello, a lawyer with more than twenty-five years experience[18]); *Barnett v. City of Chicago*, 122 F. Supp. 2d 915, 918 (N.D. Ill. 2000) (setting rate for Judson Miner, a 1967 law graduate, at $325.00 per hour[19]); *Not On The Guest List Coalition v. City of Chicago*, No. 96 C 4622, 1999 WL 350655, at *1-2 (N.D. Ill. May 19, 1999) (awarding Edward Stein, a 1967 law graduate, $300.00 per hour); *Gayton v. Kapus*, 181 F.R.D. 573, 581 (N.D. Ill. 1998) (setting $300.00 hourly rate for Jeffrey Haas, a practitioner with nearly thirty years of experience); *Quinones v. City of Chicago*, No. 91 C 3291, 1995 WL 656690, at *5-6 (N.D. Ill. 1995) (setting $300.00 hourly rate for Kenneth Flaxman, a lawyer with twenty-three years of experience).[20]

Loevy's resume is more comparable to that of Kathleen Coyne Ropka, a civil rights lawyer whose affidavit the City has submitted. Like Loevy, Ropka is a 1993 law graduate, who has spent much of her career trying civil rights cases. (Def.'s Resp. Pl.'s Fee Pet., Ex. B.) According to Ropka, the fair market value of her services in 2002 was $220.00 per hour. (*Id.*)

---

[18]Rossiello's tenure as a lawyer was drawn from *LeTourneau v. Pan Am. Fin. Servs., Inc.*, No. 97-3543, 1998 WL 538130, at *2 (7th Cir. Aug. 21, 1998).

[19]Miner's tenure as a lawyer was obtained from www.martindale.com.

[20]Also inapt is plaintiff's comparison of Jon Loevy's requested rate to that of the Mayer, Brown, Rowe & Maw lawyers who defended United Airlines in *Gordon v. United Airlines*, No. 98 C 1378. The fact that a corporation like United was willing to pay premium rates to big firm lawyers to defend against an employment discrimination suit has little bearing on the current market rate for lawyers who represent plaintiffs in section 1983 cases.

Given the evidence submitted by both parties on this issue, the Court finds that the reasonable hourly rate for a civil rights lawyer with Jon Loevy's skills and experience is in the range of $220.00 to $300.00 per hour. Given his performance in this case, the Court finds it appropriate to place Loevy at the high end of that range at a rate of $275.00 per hour.

Michael Kanovitz has slightly less experience than Jon Loevy. Kanovitz has been a lawyer for ten years and a civil rights law practitioner for the last six. (Pl.'s Exs. Supp. Fee Pet., Ex. E. ) In 2001, Kanovitz says he billed civil rights clients $240.00 per hour. (*Id.*) Given those facts, the Court finds that an hourly rate of $250.00 is reasonable for Kanovitz.[21]

Though he has been a lawyer for forty years, Arthur Loevy is a less experienced litigator and civil rights practitioner than his son and Kanovitz. (*Id.*) After graduating from law school in 1963, Arthur Loevy practiced labor law until 1970. (*Id.*) Thereafter, he began a twenty-seven year stint as a union official. (*Id.*) Loevy did not return to the practice of law until 1997, and has been doing civil rights work for only six years. (*Id.*) Under the circumstances, the Court finds $235.00 per hour to be a reasonable rate for Arthur's services.

Russel Barnett has been a lawyer for ten years. (*Id.*) He has spent the bulk of his career, however, doing insurance defense work. (*Id.*) Indeed, it is not clear that Barnett is a civil rights practitioner at all. Tempering his litigation experience with his lack of work in the civil rights arena yields a reasonable hourly rate of $235.00 per hour for Barnett.

---

[21]Plaintiff says that Kanovitz should be awarded an hourly rate of $275.00 because he actually billed a client at that rate for a state court case in 2003. Kanovitz does not, however, describe the kind of work that he performed for that client. Absent evidence that Kanovitz received $275.00 an hour for civil rights work, the fact that he was once paid at that rate has little impact on the market rate analysis.

Danielle Loevy is a 1995 law graduate, who has been doing civil rights work for the last five years and has some trial experience. (*Id.*) Jon Rosenblatt is a 1999 law graduate, who has been doing civil rights work for two years and, apparently, has no trial experience. (*Id.*) Danielle has slightly more experience and Rosenblatt slightly less than Shehnaz Mansuri, a 1998 law graduate, who has been doing civil rights litigation for six years and charged $200.00 per hour for her time in 2002. (City's Resp. Pl.'s Fee Pet., Ex. I.) Taking Mansuri's rate as a benchmark, the Court finds that reasonable rates for Danielle and Rosenblatt are $200.00 and $170.00, respectively.[22]

Multiplying the reasonable hours by the reasonable hourly rates yields a lodestar of $562,757.75 ($346,156.25 for Jon Loevy [1258.75 hours x $275.00 ] plus $14,158.75 for Arthur Loevy [60.25 hours x $235.00] plus $14,600.00 for Danielle Loevy [73 hours x $200.00] plus $61,875.00 for Michael Kanovitz [24.75 hours x $250.00] plus $4,207.50 for Jon Rosenblatt [24.75 hours x $170.00] plus $119,885.25 for Russel Barnett [510.15 hours x $235.00] plus $1875.00 for paralegal work [18.75 hours x $100.00]).[23]

Our inquiry does not end with the lodestar, however. We can increase or decrease the lodestar based on various other considerations including: (1) the time required; (2) the difficulty of the questions presented; (3) the skill required to perform the legal service properly; (4) the attorney's inability to accept other employment during the life of the case; (5) the usual fee; (6) whether the fee is fixed or contingent; (7) any relevant time limitations; (8) the amount of money

---

[22] With all due respect to Judge Holderman, we believe that his award of $220.00 per hour to Rosenblatt was too high for an attorney with so little experience. *See Garcia*, 2003 WL 22175620 at *3.

[23] The Court relied on Exhibit A to plaintiff's fee petition and Exhibit J to the City's response in calculating the total number of hours for each attorney.

involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley,* 461 U.S. at 430 n.3.

As the Supreme Court noted, many of those factors, such as the time and skill required by the case, the experience, reputation and ability of the attorneys, the usual fee, and awards in similar cases, are subsumed within the lodestar calculation. *Id.* at 434 n.9. Moreover, several other factors, the nature and length of the professional relationship with the client, the time limitations imposed by the client or the circumstances, and the opportunity cost of the case, are inapplicable here.[24] That leaves the following considerations: the difficulty of the questions presented, the undesirability of the case, the amount of money involved and the result obtained, and the nature of the fee.

Those factors mandate a decrease in the lodestar, not an increase as plaintiff argues. The legal questions presented by the case, whether plaintiff was unreasonably seized and maliciously prosecuted, are neither novel nor complex. This was not a case that required plaintiff's counsel to educate themselves or the jury in esoteric concepts or arcane subjects. In fact, as we noted above, the case really boiled down to one question: Did plaintiff actually point a gun at defendant Escalante? Consequently, the bulk of plaintiff's witnesses were police officers and State's Attorneys who witnessed or investigated the events that spawned this case and, with a few exceptions, their

---

[24]Plaintiff's lawyers say the case consumed much of their time, but they do not say that they would have earned more money had they sold that time to other clients.

testimony was quite brief.[25]  Moreover, plaintiff offered only one expert and presented damage testimony solely through plaintiff and his sister.

These were also not lengthy trials. Though the parties presented testimony for six days, those "days" were rarely more than five hours long and, particularly in the second trial, included numerous side-bars, during which the parties debated the import of prior rulings or the propriety of each other's conduct. In short, except for the animosity the parties seemed to harbor for one another, this was an unexceptional case. Accordingly, the time plaintiff's lawyers spent on it – nearly 2,400 hours in total, including more than 300 hours to prepare for each trial – is excessive.[26]

Moreover, the suit was not particularly "undesirable." Though the case pitted plaintiff's version of events against that of a police officer, that fact does not distinguish it from most other excessive force cases. Finally, though plaintiff prevailed in this litigation, his monetary recovery, $25,000.00 in compensatory damages and $250,000.00 in punitive damages, which plaintiff admits are virtually uncollectible, was quite modest. An attorney's fee award that is more than twenty times larger than plaintiff's likely recovery simply cannot be characterized as reasonable.

---

[25]In fact, in the first trial, Officer Jeleniewski did little more than assert his Fifth Amendment rights and in the second trial, Officer Williams did little more than assert his utter lack of recall about anyone or anything related to this case.

[26]According to plaintiff, his lawyers spent 355.75 hours preparing for the first trial and 301 hours preparing for *the very same trial* one year later. (*See* Pl.'s Reply Supp. Fee Pet. at 15.) Certainly counsel would have needed to reacquaint themselves with the case after a one-year hiatus, but that process should have taken a fraction of the time that was devoted to the initial preparation of the case for trial.

On balance, the *Hensley* factors militate decreasing the lodestar by one-third. Thus, the Court finds that plaintiff can recover a total of $375,171.84 ($562,757.75 minus $187,585.91) for the hours billed by his attorneys.[27]

That does not end the matter, however. A fee award under section 1988 is not comprised solely of the cost of attorney time reflected in the lodestar. Rather, a reasonable attorney's fee also includes "expenses of litigation that are distinct from . . . statutory costs or the costs of the lawyer's time reflected in his hourly billing rates," like postage, long-distance calls, travel and costs for computerized legal research. *Heiar v. Crawford County*, 746 F.2d 1190, 1203 (7th Cir. 1984); *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 38 F.3d 1429, 1440 (7th Cir. 1994) (characterizing computerized legal research expenses as attorney's fees not costs). Such expenses, as the *Heiar* court pointed out, must be distinguished from statutory costs that are recoverable under Federal Rule of Civil Procedure ("Rule") 54(d).

The costs recoverable under Rule 54(d) are set forth in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and

---

[27]The contingent nature of the fee mandates neither an increase of the lodestar, *see Price v. Marshall Erdman & Assocs., Inc.*, 966 F.2d 320, 328 (7th Cir. 1992) (stating that use of a multiplier to compensate for economic risk is inappropriate "in a substantial money case on behalf of a client with whom a lawyer can negotiate a contingent fee"), nor, given the modest recovery in this case, a decrease.

16

salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Seventh Circuit has interpreted this statute to include costs for deposition transcripts and photocopies. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998). To award costs under Rule 54(d), we must determine that there is statutory authority for the costs sought to be recovered and that the costs are reasonable and were necessary to the litigation. *Id.*

Plaintiff's $35,798.68 "expense" request includes both section 1988 expenses and Rule 54(d) costs. The requests for the costs of postage, messengers, parking, taxis, supplies, meals, legal research, trial exhibits and private process servers fall under section 1988.[28] *Collins v. Gorman*, 96 F.3d 1057, 1059 (7th Cir. 1996); *Haroco*, 38 F.3d at 1440; *Heiar*, 746 F.2d at 1203. The requests for filing fees, subpoena and witness fees, and hearing and deposition transcript fees fall under Rule 54(d). 28 U.S.C. § 1920. Photocopy costs fall under Rule 54(d) if they were for copies of pleadings, motions or other documents "necessarily obtained for use in the case." *Id.* Otherwise, those costs fall under section 1988. Finally, the requests for fees paid to expert witnesses hired by plaintiff are not recoverable under either the statute or the Rule. *See id.* (categorizing "[c]ompensation of *court appointed* experts" as costs) (emphasis added); *West Virginia Univ. Hosp. v. Casey*, 499 U.S. 83, 86-87 (1991) (stating that there must be explicit statutory authority for the recovery of expert witness fees before they can be awarded under section 1988); Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified in 42 U.S.C. §§ 1988, 2000e-5(k)) (providing explicit authority for the recovery of expert witnesses fees in section 1981, section 1981a and Title VII cases, but not in section 1983 cases).

---

[28]If the fees for private process servers do not exceed those of the Marshals' Service, they can be recovered as costs under Rule 54(d). *Collins*, 96 F.3d at 1059.

Plaintiff has provided insufficient support for his request for section 1988 expenses.[29] Certainly, plaintiff's counsel was not required to compile a list of every sheet of paper photocopied, mailed or sent by messenger and justify each decision to do so. But we cannot make a reasonableness determination without the underlying invoices or receipts for the various services and some explanation of: (1) what was mailed or messengered, to whom and why; (2) what was copied and why; and (3) why cab rides, parking, overtime meals and transportation were required. Because plaintiff has not provided invoices or adequate explanations of the reasonableness of most of the expenses he incurred, he may recover only $113.69 for them.[30]

The Rule 54(d) costs requests are also problematic. First, many of the requests are unsupported by invoices or other documentation. Second, plaintiff seems to have requested double payment for certain hearing or trial transcripts. One request is for $2,500.00 paid by check to Pam Warren, one of the Court's official court reporters. But the invoices that support plaintiff's other requests for fees paid to Warren suggest that $2,500.00 was a deposit from which she deducted her fees, not a separate charge. In addition, plaintiff seeks to recover for expedited deposition transcripts without explaining why rush service was required. Finally, plaintiff seeks reimbursement for an $87.50 court reporter appearance charge for a deposition he apparently cancelled.

---

[29]Plaintiff attached cost information to his reply brief, which he said "added explanations" about the reasonableness and necessity of the various costs and expenses. In reality, it added a number of costs that were not included with plaintiff's original submission, but did little to explain why any of the costs and expenses were necessary to the litigation. (*See* Pl.'s Reply, Ex. H.)

[30]This figure includes $4.25 spent on 2/22/00 for tabs for the summary judgment motion, $10.77 spent on 4/1/01 to copy documents for jury instructions and stipulations, $38.56 spent on 7/14/02 for dry erase boards and markers for use at trial and $60.11 spent on 7/22/02 for oversize printing and mounting of trial exhibits. Plaintiff may not recover for any other claimed expenses because he has not provided receipts or invoices for them and/or he has not adequately explained why the expenses were incurred.

After removing the costs that were improperly supported or requested, plaintiff may recover the filing fee for the case, the court reporter charges that are supported by invoices,[31] the fact witness and subpoena fees, and the $561.58 charge for photocopying and binding the summary judgment motion, a total of $14,393.28.

## Conclusion

For all of the reasons stated above, the Court grants plaintiff's fee petition in part and denies it in part. The Court awards plaintiff a reasonable attorney's fee of $375,285.53 ($375,171.84 in fees plus $113.69 in expenses) and taxes Rule 54(d) costs in the amount of $14,393.28.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: __AUG 1 2 2004__

---

[31]Because plaintiff has not demonstrated that expedited service was necessary, the Court has reduced his requests for the transcripts of the Arnold, Williams, Billingslea and McQuaid depositions and the hearing on January 12, 2000, to the $3.30 per page charge permitted by the Judicial Conference for original, ordinary transcripts.